IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CALVIN CAMPS,<br><br>　　　　*Plaintiff*,<br><br>　v.<br><br>MICHAEL NUTTER, *et al.*,<br><br>　　　　*Defendants*. | CIVIL ACTION<br>NO. 14-01498 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　June 27, 2017

## MEMORANDUM

*Pro se* Plaintiff Calvin Camps brings this action under 42 U.S.C. § 1983, alleging that the City of Philadelphia, former Philadelphia Prison System ("PPS") Commissioner Louis Giorla and Warden John Delaney violated his constitutional rights while he was incarcerated as a pretrial detainee at the Curran-Fromhold Correctional Facility ("CFCF"). Defendants filed a Second Motion to Dismiss Camps's Amended Complaint. For the reasons below, the Court denies the Motion.

### I.

Camps filed his Complaint against former Mayor Michael Nutter, Giorla and Delaney on March 12, 2014. (ECF No. 1.) His Complaint included detailed allegations about the poor and unsanitary conditions to which he was allegedly subjected while housed at CFCF as a pretrial detainee, *see* (Compl. ¶¶ 7–15), and some of the effects those conditions had on him, *see* (*id.* ¶¶ 9, 10). His Complaint also alleged that Nutter "promulgate[d] policies governing the PPS . . . including policies affecting conditions of confinement" and that Giorla and Delaney were "charged with the managing and

1

overseeing all daily operations at CFCF." (*Id.* ¶¶ 3–5.) On June 11, 2014, Defendants filed a Motion to Dismiss, contending that Camps had failed to sufficiently allege their personal involvement with the alleged constitutional violations. (ECF No. 8.) On August 13, 2014, Judge Shapiro granted Defendants' Motion, concluding that Camps "failed to include any allegations that [the] defendants were personally involved" and noting the Complaint "include[d] no allegations that even name the defendants" other than the "Parties" section of the Complaint, which included only their names and job responsibilities. (ECF No. 10, at 3.) She also stated that Camps failed to allege any personal injury. (*Id.* at 2.)

Though Judge Shapiro granted Camps leave to file an amended complaint, he did not do so. From August 2014 to February 2016, the only filings in the case were submitted by Camps: notices of address changes, a request for copies of his Complaint and various requests to appoint counsel. (ECF Nos. 12–15, 19.) Camps was apparently relocated to different prisons on several occasions. (ECF Nos. 13, 15, 25.) On February 23, 2016, Defendants filed a Motion to Dismiss for Lack of Prosecution. (ECF No. 20.)

On February 24, 2016, Camps filed an Amended Complaint, naming only Giorla, Delaney and the City. (ECF No. 21.) The Amended Complaint responds to, and attempts to correct the deficiencies pointed out by Judge Shapiro. It includes more detailed allegations regarding both the Defendants' personal involvement and the personal injuries Camps suffered as a result of the alleged violations. *See* (*id.* ¶¶ 2, 3, 1–5). It does not, however, include any of the specific allegations regarding the unsanitary conditions that were contained in his first Complaint. (*Id.*) Camps likely did not realize that his Amended Complaint would supersede his first Complaint and

2

should ideally contain the allegations therein in addition to those necessary to cure the Complaint's deficiencies.

In analyzing Defendants' Second Motion to Dismiss, the Court will consider the allegations in both the Complaint and the Amended Complaint. Though an amended complaint typically "supersedes the original and renders it of no legal effect," allegations contained in the original complaint maintain their legal effect if "the amended complaint specifically refers to or adopts the earlier pleading." *See W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)). Camps's Amended Complaint specifically refers to his initial Complaint and relies on some of its allegations. *See* (Am. Compl. ¶¶ 2–4, ECF No. 21). Though his Amended Complaint does not contain as many details about the unconstitutional acts and conditions alleged in his initial pleading, it refers throughout to "those policies and customs" which "caused said unconstitutional acts and violations," clearly referencing the housing policies and resulting conditions alleged in his first Complaint. *See* (*id.* at 1) (alleging Defendants approved "those policies and customs, [w]hich has caused [him] to be subjected to unconstitutional conditions and acts, injuries and punishments to all pretrial detainees, being housed in all said Philadelphia Facilities"). Camps further alleges that the Defendants should have known the policies "are unconstitutional as to those decisions, made by Commissioner Louis Giorla, Warden John Delaney, City of Philadelphia, *on said issues filed under Complaint and Amended Complaint*." (*Id.* at 4 (emphasis added).)

3

Particularly given Camps's *pro se* status, these references contained in his Amended Complaint are sufficient to permit the Court to consider the allegations contained in both the Complaint and Amended Complaint for the purposes of analyzing Defendants' Second Motion to Dismiss. It is particularly appropriate to do so here where Camps's case has been pending since 2014 and the allegations contained in his Complaint and Amended Complaint are more than sufficient to state a claim and put Defendants on notice of the same.

## II.

Camps contends that his constitutional rights were violated as a result of CFCF's inhumane prison conditions. He asserts what is commonly referred to as a "triple celling" claim, alleging that as a result of "pervasive overcrowding in the PPS," he was housed with two other inmates in a seven foot by ten foot cell that is only fit to hold two people. (Compl. ¶¶ 7, 8, 12.) This results in one person sleeping on a "boat," which is a plastic tray used as a bed. (*Id.*) The boat is located near the cell's toilet and exposes the detainee to urine and fecal matter. (*Id.*) Camps claims that "as a result of overcrowding, the attendant security and safety problems it causes, and the City's deliberate failure to provide adequate staffing, the PPS population as a whole has increasingly been subjected to extended periods of 'restricted movement' and 'lockdowns,'" forcing prisoners into close physical proximity, creating a high risk for the spread of infectious disease and violence and preventing prisoners from accessing important programs. (*Id.* ¶¶ 13, 14.) The "nearly continuous lockdowns" also allegedly prevent adequate sanitation of the cells, which Camps describes as "infested with insects and rodents." (*Id.* ¶¶ 9, 11,14.) Camps further contends that the lockdowns

prevent him from showering on a daily basis or otherwise maintaining a clean appearance. (*Id.* ¶¶ 9, 10.)

Camps also complains of other poor and unsanitary conditions at CFCF, including: showers "covered with black mold and in disrepair"; inadequate recreational space; poor ventilation and air quality; damaged mattresses and sheets; inadequate laundry access; and failure to train correctional officers to supervise the overcrowding. (*Id.* ¶¶ 11, 12.)

In his Amended Complaint, Camps alleges that the City, Giorla and Delaney "are involved" with, "participated" in, "have personal direction of policies" and "have approved those policies and customs" which caused him to be subjected to the unconstitutional conditions, acts, injuries and punishment. (Am. Compl. ¶ 2) He contends that Giorla and Delaney had knowledge of the relevant facts and housing policies, including knowledge about the spaces where inmates are held and the number of beds therein. *See* (*id.* ¶ 3).

As a result of the unconstitutional conditions, Camps has experienced physical and mental suffering, sickness, loss of sleep, anxiety and emotional distress. (*Id.* ¶¶ 1–5.) He also contends the overcrowded conditions have prevented him from receiving adequate medical care, *see* (Compl. ¶ 9), and states that he suffers from a number of

medical conditions including, *inter alia*, high blood pressure, headaches, fatigue, muscle pain, chills and problems with his heart, lung and liver, *see* (Am. Compl. ¶ 5).[1]

### III.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.*; *see also D.P. Enters. v. Bucks County Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. *Conley*, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.* The

---

[1] Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §§ 1997, *et seq.*, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit defines substantial physical injury as a "less-than-significant-but-more-than-*de minimis* physical injury" and construes the requirement as applying only to claims for compensatory damages. *Mitchell v. Horn*, 318 F.3d 523, 533–36 (3d Cir. 2003).

Thus, in order to recover compensatory damages for any injuries—physical, emotional or otherwise—Camps must allege and prove a substantial physical injury. Construing Camps's pleadings liberally, his allegations are consistent with the types of physical injuries that other federal courts have recognized as sufficient under § 1997e(e). *See Hall v. Klemm*, No. 15-20 E, 2017 WL 913954, at *15 (W.D. Pa. Feb. 1, 2017), *report and recommendation adopted*, No. 15-20, 2017 WL 913803 (W.D. Pa. Mar. 7, 2017) (allegations that plaintiff suffered weight loss, dizziness, fatigue and headaches sufficient to satisfy physical injury requirement); *see also Munn v. Toney*, 433 F.3d 1087, 1089 (8th Cir. 2006) (headaches, cramps, nosebleeds, and dizziness were sufficient forms of physical injury).

6

"complaint must allege facts suggestive of [the proscribed] conduct." *Twombly*, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Sterling v. Southeastern Pennsylvania Transp. Auth.*, 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Brown v. Card Service Ctr.*, 464 F.3d 450, 456 (3d Cir. 2006) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Courts construe a plaintiff's allegations liberally when he or she is proceeding *pro se*. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Bush*, 367 F. Supp. 2d at 725 ("Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004))).

## IV.

Defendants contend that Camps has failed to state a claim because he (1) failed to allege an underlying constitutional violation and (2) failed to allege that Defendants were personally involved with the alleged violations. (Defs.' Second Mot. to Dismiss, at 5–7, ECF No. 26.)

7

## A.

Pretrial detainees' claims regarding conditions of confinement, including "triple-celling" claims, are analyzed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 534 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 166–67 (3d Cir. 2005). Conditions of confinement are unconstitutional if the condition is: (1) the result of an express intent to punish or (2) not rationally related to a legitimate government purpose. *Bell*, 441 U.S. at 538–39. A district court must look to the "totality of the conditions" of the specific prison at issue to determine whether triple celling is rationally related to the legitimate government purpose of managing an overcrowded prison. *Hubbard*, 538 F.3d at 233. This analysis depends on the "size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Id.*

Camps's Complaint alleges several unsanitary, unsafe or otherwise inadequate conditions that give a glimpse of the totality of the circumstances he experienced. *See* (Compl. ¶¶ 7–14). The facts alleged, construed liberally and taken as true, give enough detail about the circumstances in the prison to survive a motion to dismiss. It is plausible that these prison conditions were not rationally related to a legitimate government purpose and therefore violated Camps's constitutional rights under the Fourteenth Amendment. *See, e.g.*, *Peele v. Delaney*, No. 12-4877, 2017 WL 467347, at *4 (E.D. Pa. Feb. 3, 2017) (denying motion to dismiss CFCF inmate's triple celling claim under Section 1983); *Lewis v. Nutter*, No. 16-0528, 2016 WL 7028073, at *3 (E.D. Pa. Nov. 30, 2016) (same); *Pichalskiy v. Nutter*, No. 15–4704, 2016 WL

7018545, at *2 (E.D. Pa. Nov. 30, 2016); *Cain v. Nutter*, No. 15-5524, 2016 WL 7031891, at *3 (E.D. Pa. Dec. 1, 2016); *Petty v. Nutter*, No. 15–3420, 2016 WL 7018538, at *3 (E.D. Pa. Nov. 30, 2016).

**B.**

To establish a *prima facie* case under § 1983, Camps must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). Camps sues the City as well as individual defendants—Giorla and Delaney. *See* (Am. Compl. ¶¶ 2, 3).

**i.**

The Court analyzes Camps's claims against the City under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable for the misconduct of its employees under the doctrine of *respondeat superior*. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658).

9

A policy "is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citations and quotation omitted). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480). "[A] policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citation and quotation omitted).

A successful *Monell* claim must therefore allege: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997). "A showing of simple or even heightened negligence will

10

not suffice." *Id.* In other words, custom "requires proof of knowledge and acquiescence by the decisionmaker." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

In his Amended Complaint, Camps alleges that the City owns, operates and controls the PPS. (Am. Compl. ¶ 3); *see also* (Compl. ¶ 3) ("Philadelphia is a municipality which owns, operates, controls and promulgates policies governing the PPS, including but not limited to policies affecting conditions of confinement for pretrial detainees and convicts housed within the system."). Construing Camps's allegations liberally, he contends the City created and maintained policies that created unconstitutional risks, including a custom of housing inmates in overcrowded cells. Camps states he experienced "pervasive overcrowding [in] the PPS" and that the "PPS population as a whole has increasingly been subjected to extended periods of restricted movement and lockdowns," suggesting that all inmates suffered the same circumstances—a fact that could establish a practice or custom. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (plaintiff's complaint did not "allege other inmates suffered similar deprivations . . . that might establish a custom") (citing *Bielevicz*, 915 F.2d at 850 (custom may be proven by showing that a specific course of conduct is "well-settled and permanent," even if that conduct is not expressly endorsed by a written rule))). Finally, he alleges that Giorla and Delaney, official policymakers, knew about and acquiesced in the policy in deliberate indifference of his constitutional rights. His allegations are therefore sufficient to state a claim against the City.

**ii.**

"In order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). While "[g]overnment officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First. Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Supervisor-defendants may be liable if they were personally involved in the constitutional violation, *i.e.* they participated in it, directed others to commit it or had actual knowledge of and acquiesced in it. *Id.* Supervisor-defendants may also be liable if "they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

To show that a supervisor is liable under § 1983 for deliberate indifference to an unconstitutional policy or practice, "[t]he plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the

underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the supervisor had done more than he or she did." *Id.* at 216 (citing *Sample*, 885 F.2d at 1118). A plaintiff must specifically identify the acts or omissions of the supervisors that show deliberate indifference, and suggest to the Court a relationship between the "identified deficiency" of a policy or custom and the injury suffered. *Id.*

Camps's first Complaint alleged that former Commissioner Giorla and Warden Delaney were "charged with the managing and overseeing all daily operations at CFCF." (Compl. ¶¶ 4, 5.) Camps's Amended Complaint further alleges that Giorla and Delaney "are involved" with, "participated" in, "have personal direction of policies" and "have approved those policies and customs" which caused him to be subjected to the unconstitutional housing conditions. (Am. Compl. ¶ 2.) He contends that Giorla and Delaney had knowledge of the relevant facts and housing policies, including knowledge about the spaces where inmates are held and the number of beds therein. *See* (*id.* ¶ 3). Finally, he claims that despite their "personal knowledge and involvement" of the overcrowded conditions and the resulting risk of constitutional violations, Defendants "did not take steps to prevent those illegal conditions," and thus caused punishment to all pretrial detainees, including Camps. (*Id.* at 1, 5.)

Camps has identified a policy, connected the Defendants to the policy and connected the policy to the alleged injury or constitutional violation. His allegations are therefore sufficient to allege Defendants' personal involvement at the motion to

13

dismiss stage and Defendants' Motion is denied.[2] *See, e.g.*, *Peele*, 2017 WL 467347, at *3–4; *Cain*, 2016 WL 7031891, at 2–4; *Lewis*, 2016 WL 7028073, at 2–3; *Pichalskiy*, 2016 WL 7018545, at *3–4; *Petty*, 2016 WL 7018538, at *2–4.

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

---

[2] Defendants also request that Camps's claims be dismissed for failure to prosecute the case. (Defs.' Second Mot. to Dismiss, at 8–9.) Defendants contend dismissal is warranted because Camps failed to allege sufficient facts to support his claim and failed to comply with a Court Order directing him to notify the Court whether he wished to proceed *pro se* after he was unable to obtain counsel from the Prisoners' Civil Rights Panel. (*Id.*) Camps, however, has alleged sufficient facts to support his claim. And though he may not have formally notified the Court that he planned to proceed *pro se* rather than withdraw his claim, he continued to remain responsive, filing with the Court various affadavits and notices of change of address. (ECF Nos. 24, 25, 28–30.) Moreover, after Defendants filed their Motion, Camps filed a request for additional time to respond and a response in opposition. (ECF Nos. 32 & 34.) It is apparent that Camps wishes to proceed *pro se* and has attempted to comply with Court Orders and deadlines to the best of his ability despite his continued incarceration and frequent relocations. The Court therefore declines to dismiss his case for failure to prosecute.