IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CALVIN CAMPS,<br><br>               *Plaintiff,*<br><br>    v.<br><br>MICHAEL NUTTER, *et al.*,<br><br>               *Defendants.* | CIVIL ACTION<br>NO. 14-01498 |

**PAPPERT, J.**                                                                                                    **March 14, 2019**

## **MEMORANDUM**

*Pro se* Plaintiff Calvin Camps alleges that the City of Philadelphia, former Philadelphia Prison System Commissioner Louis Giorla and Warden John Delaney violated his constitutional rights while he was incarcerated as a pretrial detainee at the Curran-Fromhold Correctional Facility. Before the Court is Defendants' Motion for Summary Judgment, which the Court grants for the reasons that follow.

I

A

Camps asserts what is commonly referred to as a "triple celling" claim. While a pretrial detainee at CFCF, Camps alleges that he was housed with two other inmates in a seven foot by ten foot cell designed to hold two people, with one person sleeping on the floor on a "boat," a plastic tray used as a bed. (Compl. ¶¶ 7, 8, 12, ECF No. 1.) Because the boat was located near the cell's toilet, Camps claims that he was exposed to urine and fecal matter. (*Id.*) Camps also alleges that he was subjected to extended periods of restricted movement and lockdowns, which he contends created a high risk

1

for the spread of infectious disease and violence and prevented prisoners from accessing important programs. (*Id*. at ¶¶ 13, 14.) The lockdowns prevented him from showering on a daily basis or otherwise maintaining a clean appearance. (*Id*. at ¶¶ 9, 10.) Camps also described other poor and unsanitary conditions at CFCF, including cells "infested with insects and rodents", showers "covered with black mold and in disrepair", inadequate recreational space, poor ventilation and air quality, damaged mattresses and sheets and inadequate laundry access. (*Id*. at ¶¶ 9, 11, 12, 14.)

Because of these conditions, Camps alleges that he experienced physical and mental suffering, sickness, loss of sleep, anxiety and emotional distress. (Am. Compl. ¶¶ 1–5, ECF No. 21.) He contends the overcrowded conditions prevented him from receiving adequate medical care, *see* (Compl. ¶ 9), and states that he suffered from a number of medical conditions including, *inter alia*, high blood pressure, headaches, fatigue, muscle pain, chills and problems with his heart, lung and liver. *See* (Am. Compl. ¶ 5).

B

Camps filed his initial Complaint on March 12, 2014 against former Mayor Michael Nutter, Giorla and Delaney. (ECF No. 1.) Camps argued that the conditions of his confinement violated the Due Process Clause of the Fourteenth Amendment and that Defendants were deliberately indifferent to his constitutional rights in violation of 42 U.S.C. § 1983. Defendants moved to dismiss Camps' Complaint and Judge Shapiro granted Defendants' Motion on August 13, 2014, finding that Camps failed to adequately plead his injuries and the Defendants' personal involvement in the constitutional violations. (ECF No. 10.)

Camps filed an Amended Complaint on February 24, 2016, naming only Giorla, Delaney and the City as defendants. (ECF No. 21.) The Amended Complaint contained the same claims as his initial Complaint but included allegations regarding the Defendants' personal involvement and the injuries Camps purportedly suffered as a result of the alleged violations. *See* (*id*. at ¶¶ 1–5). Defendants moved to dismiss Camps' Amended Complaint, (ECF No. 26), but the Court denied the Motion. (ECF No. 42.)

The Court then held a conference on February 15, 2018 to assess Camps' discovery needs. *See* (Order, ECF No. 51). Camps participated via video conference. *See* (*id*.). The Court also ordered the Clerk of Court to refer Camps' case to the Prisoner Rights Panel for a possible appointment of counsel, *see* (ECF No. 41). At the conclusion of the discovery period, Defendants moved for summary judgment. (ECF No. 66.) Camps responded to the Motion, (ECF No. 81) and has since supplemented his response with numerous declarations, affidavits and exhibits.[1]

---

[1] In these filings, Camps raises new allegations that are not contained in his Complaint or Amended Complaint. These new allegations stem from conduct that began, at the earliest, in January 2016. Specifically, he argues for the first time that prison officials failed to provide him with adequate medical care and denied access to mail during his incarceration. *See* (Exhibits, ECF No. 70; Declaration of Gerald Rodgers, ECF No. 71; Exhibits, ECF No. 83; Declaration of Rickey Washington, ECF Nos. 45 and 61; Declaration of Dru Thompson, ECF No. 46; Declaration of Omar Hooks, ECF No. 86; Declaration of Kevin Bondy, ECF No. 89). These claims, however, are not related to the conditions of Camps' confinement while a pretrial detainee at CFCF.

Because Camps failed to plead these claims in either his Complaint or Amended Complaint, the Court will not consider them here. *See McLaud v. Indus. Res., Inc*., 715 Fed. Appx. 115, 121 n.5 (3d Cir. 2017) (noting that trial court properly refused to consider a claim that a party did not raise in an amended complaint but introduced for the first time in response to motion for summary judgment); *Bey v. Daimler Chrysler Servs. of N. Am*., No. 04–6186, 2006 WL 361385, at *11 (D.N.J. Feb. 15, 2006) ("claims [that] were not alleged in the complaint [ ] cannot be raised for the first time in opposition to a motion for summary judgment").

3

II

A

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is appropriate when the nonmoving party fails to provide evidence "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 642

(E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

B

Because Camps is proceeding *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding that *pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"). In a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).

On a motion for summary judgment, although the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him].'" *Benckini v. Hawk*, 654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (citing *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (citation omitted)). Thus, notwithstanding giving a *pro se* litigant every opportunity to functionally respond in some meaningful way to a summary judgment motion and the Court's liberal construction of the plaintiff's submissions, the same standards for summary judgment still apply. *Agogbua v. Abington Mem'l Hosp.*, No. 03–6897, 2005 WL 1353612, at *3 (E.D. Pa. 2005).

III

A

Camps alleges that the conditions of his confinement while a pretrial detainee at CFCF violated his constitutional rights. Such claims are analyzed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which prohibits conditions of confinement that "amount to punishment." *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 534–35 (1979). A condition of confinement amounts to punishment if it is the result of an express intent to punish or if it is not rationally related to a legitimate government purpose. *See Peele v. Delaney*, No. CV 12-4877, 2017 WL 467347, at *2 (E.D. Pa. Feb. 3, 2017) (citing *Bell*, 441 U.S. at 538–39).

Camps provides no evidence that the triple celling was intended to be punitive or that he was singled out for punishment. In fact, he testified at his deposition that he was treated similarly to other pretrial detainees and inmates: "I wasn't the only one forced to sleep in a boat. Every inmate that came in here when there was no beds available was forced to sleep in a boat." (Mot. Summ. J. Ex. A ("Camps Dep.") at 13:13–16, ECF No. 66-1.)

Camps instead appears to argue that the conditions of his confinement were not rationally related to a legitimate government interest. Defendants claim that the conditions of confinement were "necessary to meet the objectives of . . . dealing with prison overcrowding." (Mot. Summ. J. at 5.) In *Bell*, the United States Supreme Court recognized the government's "legitimate interests that stem from its need to manage the facility in which the individual is detained." 441 U.S. at 540. In *Union Cty. Jail Inmates v. Di Buono*, 713 F.2d 984, 993 (3d Cir. 1983), the Third Circuit Court of

Appeals also held that a county has a legitimate interest in the "management of [an] overcrowded institution."

The Court must then consider whether the conditions of Camps' confinement are rationally related to that interest. This involves a "further [ ] inquir[y] as to whether these conditions 'cause inmates to endure such genuine privations and hardship over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned to them." *Union County*, 713 F.2d at 992 (quoting *Bell*, 441 U.S. at 542). The "excessiveness" analysis requires courts to consider the totality of the circumstances, including "the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise." *Hubbard v. Taylor* (*Hubbard II*), 538 F.3d 229, 232 (3d Cir. 2008). In *Hubbard II*, even though the pretrial detainees spent up to seven months sleeping on the floor in a triple cell, the Third Circuit found that triple-celling did not violate their constitutional rights given the totality of the circumstances. *See id.* The court noted that the pretrial detainees also had access to large day rooms and found that the record did not substantiate plaintiffs' claims that the use of floor mattresses caused disease or led to the splashing of human waste on the plaintiffs. *See id.*

Here, Camps alleges that he experienced triple celling, exposure to urine and fecal matters, lockdowns, insect and rodent infestations, showers covered with black mold, inadequate recreational space, poor ventilation and air quality, damaged mattresses and sheets and inadequate laundry access. (*Id.* ¶¶ 7–12, 14.) When deposed, however, Camps testified that he was incarcerated at CFCF for only seven months and that he slept on both a boat and a bed. (Camps Dep. at 12:13–16, 21:17–

7

21.) He also testified that during that time he was transferred to the House of Corrections, where he did not experience triple celling, (*id*. at 32:17–33:13, 40:21–41:2), and stated that while incarcerated at CFCF he was able to leave his cell multiple times per day, generally for "more than two hours". (*Id*. at 40:5–19.)

To overcome a motion for summary judgment, Camps must provide evidence "sufficient to establish the existence of an element essential to that party's case, and on which [he] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Camps has not done so. He produced no evidence to support any of his claims. Accordingly, no reasonable juror could find that the conditions of his confinement were unconstitutional. *See Peele v. Delaney*, No. CV 12-4877, 2018 WL 3078765, at *3 (E.D. Pa. June 20, 2018) (granting summary judgment where plaintiff failed to provide evidence of his conditions of confinement); *Hall v. Pierce*, No. CV 14-890, 2019 WL 113728, at *7 (D. Del. Jan. 4, 2019) (same); *Robinson v. Danberg*, 673 F. App'x 205, 212 (3d Cir. 2016) (affirming same).

B

To establish a *prima facie* case under § 1983, Camps must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of*

8

*Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). Camps sues the City of Philadelphia as well as individual defendants—Giorla and Delaney.

i.

The Court analyzes Camps' claims against the City under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Generally, a municipality will not be held liable for the misconduct of its employees under the doctrine of *respondeat superior*. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658). A successful *Monell* claim therefore must allege: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658.

Because there is no underlying constitutional violation, the City may not be held liable under § 1983. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006); *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003). Even assuming, *arguendo*, that Camps had established that a constitutional violation existed, he failed to provide any evidence of a policy or custom attributable to the City.

ii

In order to sustain a § 1983 claim against Giorla and Delaney, Camps "must demonstrate that the defendant[s] [were] personally involved in the alleged violations

9

of his [ ] federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). While "[g]overnment officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First. Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Supervisor-defendants may be liable if they were personally involved in the constitutional violation, *i.e.* they participated in it, directed others to commit it or had actual knowledge of and acquiesced in it. *Id*. Supervisor-defendants may also be liable if "they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'" *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Giorla and Delaney may not be held liable under § 1983 as there exists no underlying constitutional violation. Moreover, Camps has produced no evidence that either Defendant was personally involved in or had actual knowledge of the alleged conduct or maintained a policy, practice or custom regarding Camps' conditions of confinement.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.